HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| **TOM DOTY**, individually and on behalf of all others similarly situated, | Case No.: 3:19-cv-05236-RAJ |
| Plaintiff, | **PLAINTIFF'S <u>UNOPPOSED</u> MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| **WATKINS AND SHEPARD TRUCKING, INC.**, a Montana corporation, | NOTING DATE: MARCH 23, 2022 |
| Defendant. | Without Oral Argument |

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................... 1

III.    PROCEDURAL BACKGROUND......................................................... 2

IV.     THE PROPOSED SETTLEMENT TERMS ........................................ 4

V.      ARGUMENT ...................................................................................... 6

A.      The Court Should Preliminarily Approve This Settlement Under FRCP 23(e).... 6

B.      The Class Satisfies the Requirements of FRCP 23 for Conditional Certification. 7

1.      FRCP 23(a) Requirements for Class Certification Have Been Met. ........................ 7

2.      FRCP 23(b)(3) Requirements for Class Certification Have Been Met. ................... 8

C.      The Settlement is Fair, Reasonable, and Adequate.................................................. 9

1.      The Settlement Amount is a Fair Compromise in Light of Risks and Uncertainties. ................................................................................................ 10

2.      The Parties Sufficiently Investigated and Litigated this Matter to Allow Counsel and this Court to Conclude that the Settlement is Fair, Adequate, and Reasonable. ................................................................................................ 15

3.      The Settlement was the Product of Informed, Non-Collusive, and Arm's-Length Negotiations Between Experienced Counsel Whom Jointly Support the Settlement. ................................................................................................ 15

4.      The Proposed Notice Plan is Reasonable. ............................................................. 16

VI.     THE REQUESTED ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE PAYMENT ARE FAIR AND REASONABLE.......... 16

A.      The Class Representative Payment is Reasonable. .................................................. 17

VII.    THE COURT SHOULD APPOINT CPT GROUP, INC. AS SETTLEMENT ADMINISTRATOR .............................................................. 17

VIII.   THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING........ 17

IX.     CONCLUSION .................................................................................... 18

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
- ii -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

# CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)...............................................................8

*Ayala v. Olsen Brothers Ranches, Inc.*, Benton County Super. Ct. No. 17-2-01046-1
  (July 27, 2018)………………………………………………………………………14-15

*Ayala v. U.S Xpress Enterprises, Inc.,* Case No. 5:16-cv-00137, 2019 U.S. Dist. LEXIS
  77089 (C.D. Cal. May 2, 2019) ..............................................................................................12

*Birnbaum & Delapina v. Junk Consulting Services, LLC*, King County Super. Ct. No.
  20-2-00351-4 KNT (Feb. 1, 2021)………………………………………………………14

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984)......3, 11

*Churchill Village, L.L.C. v. Gen. Elc.,* 361 F.3d 566 (9th Cir. 2004) ........................................10

*Cole v. CRST, Inc.,* 2012 U.S. Dist. LEXIS 144944, at \*21–22 (C.D. Cal. 2012).....................12

*Connell v. Heartland Express,* Case No. 2:19-cv-09584-RGK-JC, 2020 U.S. Dist. LEXIS
  29235 (C.D. Cal. Feb. 6, 2020) ..............................................................................................12

*Demetrio v. Sakuma Bros. Farms, Inc.*, 183 Wn.2d 649 (Wash. 2015)……………………...10,12

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ..................................................................16

*Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994) .................................................................17

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998) ...................................... passim

*Helde v. Knight Transportation,* 2015 WL 11216714, at \*1–2 (W.D. Wash., Mar. 31,
  2015)………………………………………………………………………………………..9, 10

*Helde v Knight Transportation*, 2016 WL 1687961, at \*4 (W.D. Wash., Apr. 26, 2016)…10, 13

*Henry v. Cent. Freight Lines, Inc.,* Case No. 2:16-cv-00280-JAM (EFB), 2019 U.S. Dist.
  LEXIS 99594, at \*9-11 (E.D. Cal. June 13, 2019).................................................................12

*Hughes v. Microsoft Corp*., No. C98-1646C, 2001 WL 34089697, at \*7 (W.D. Wash.
  Mar. 26, 2001) .........................................................................................................................15

*In re Beef Indus. Antitrust Litig.,* 607 F.2d 167, 179-80 (5th Cir. 1979) ....................................9

*In re Bluetooth Headset Prods. Liab.,* 654 F.3d 935, 942 (9th Cir. 2011) ...............................17

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)…………………………14

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036,1042 (N.D. Cal. 2008)……………...13-14

*In re Syncor ERISA Litig.,* 516 F.3d 1095, 1101 (9th Cir. 2008)...............................................10

*International Brotherhood of Teamsters, Local 2785 v. FMCSA,* 9th Cir. Case No.
  18-73488 (Jan. 15, 2021)............................................................................................... passim

*John Burnell, et al., v. Swift Transp. Co. of Arizona, LLC,* 5:10-cv-00809-VAP-OP,
  2016 WL 2621616 (C.D. Cal. May 4, 2016)...........................................................................12

*Ladwig v. Arnie's Restaurants NW, Inc.*, King County Super. Ct. No. 20-2-05319-8 SEA
  (May 17, 2021)………………………………………………………………….…………14

*Lewis v. Starbucks Corp.,* 2008 WL 4196690, at \*6 (E.D. Cal. Sept. 11, 2008).. ....................15

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
- iii -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

*Mendis v. Schneider National Carriers, Inc.* 2016 WL 66500992, AT *4 (W.D. Wash Nov. 10, 2016)……………………………………………………………………10

*Mendis v. Schneider National Carriers, Inc.,* 2017 WL 497600, at *7 (W.D. Wash. Feb. 2, 2017)………………………………………………………………….9, 13

*Mercury Interactive Corp.,* 618 F.3d 988, 992 (9th Cir. 2010)…………………………17

*Millican v. Seattle Tennis Club et al.,* King County Super. Ct. No. 20-2-05117-9 SEA (May 14, 2021)…………………………………………………………..………14

*Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950) ...............................16

*North v. Superior Hauling & Fast Transit, Inc.,* Case No. 5:18-cv-02564-JGB-KK, Dkt. No. 51 (C.D. Cal. May 31, 2019) ...........................................................................11

*Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982)...........................9

*Ortega v. J.B. Hunt Transport, Inc.,* Case No. 2:07-cv-08336-RGK-AFM (C.D. Cal. Aug. 7, 2018) ...............................................................................................................12

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985) ..............................................................16

*Rannis v. Recchia,* 380 F. App'x 646 (9th Cir. 2010) ..................................................................7

*Robinson v. Chefs' Warehouse, Inc.,* No. 15-cv-05421-RS, 2019 U.S. Dist. LEXIS, at *11-12 (N.D. Cal. Sept. 10, 2019) .............................................................................12

*Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009)……………………………14

*Sampson v. Knight Transp., Inc.,* 193 Wn.2d 878 (Wash. Sept. 5, 2019) ...............................2, 11

*Schilling v. Radio Holdings, Inc.,* 136 Wn.2d 152, 160, 961 P.2d 371, 372 (1998) ..................13

*Selk v. Pioneerd Mem'l Heathcare Dist.,* 159 F. Supp. 3d 1164, 1175 (S.D. Cal. 2016)………14

*Silber v. Mabon,* 18 F.3d 1449 (9th Cir. 1994).............................................................................16

*Skau v. JBS Carriers, Inc.,* Case No. 2:18-cv-00681-RAJ, Doc. #47, p. 4 (W.D. Wash. Sept. 23, 2019)...............................................................................................11

*Valiente & Aiad v. Swift Transp. Co. of Arizona, LLC,* 9th Cir. Case No. 21-55456…………4, 13

*Wingert v. Yellow Freight Sys., Inc.,* 146 Wn.2d 841 (Wash. 2002)...................................11, 12

*Wren v. RGIS Inventory Specialists,* No. C–06–05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. April 1, 2011)...................................................................................................10

*Young, Jr., v. Safelite Fufillment, Inc.,* Case No. 2:19-cv-01027-JLR, Doc. #33 (W.D. Wash. Dec. 3, 2020)…………………………………………………………14

## STATUTES

49 U.S.C. 31141…………………………………………………………………...…2,4

Revised Code of Washington § 49.46 ...........................................................................2, 16

Revised Code of Washington § 49.46.020 ...................................................................2, 16

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
- iv -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

Revised Code of Washington § 49.46.050…………………………………………..…1, 2

Revised Code of Washington § 49.46.070…………………………………………..…1, 2

Revised Code of Washington § 49.46.090 ................................................................2, 16

Revised Code of Washington § 49.52 ............................................................... passim

Revised Code of Washington § 49.52.070……………………………………………16

Washington Annotated Code § 296-126-021………………………………………...…11

Washington Annotated Code § 296-126-092 ............................................................1, 2

Washington Annotated Code § 296-131-020……………………………………...…..10

## **RULES**

Federal Rules of Civil Procedure 23 .................................................................... passim

Federal Rules of Civil Procedure 41……………………………………………………...4

Washington Minimum Wage Act……………………………………………………2, 11

## **TREATISES**

Manual for Complex Litigation (4d ed. 2004) ...............................................................6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

## I.    INTRODUCTION

Plaintiff Tom Doty ("Plaintiff") seeks preliminary approval of a $50,000 non-reversionary class action settlement of wage and hour claims against Defendant Watkins and Shepard Trucking, Inc. ("Defendant" or "Watkins"). This class action was brought on behalf of approximately 115 Washington State residents employed by Defendant as truck drivers paid by Defendant on a piece-rate compensation basis from February 25, 2016 through November 17, 2020 (the "Class Period") (hereinafter the "Class or "Class Members"). Plaintiff alleges that Defendant failed to pay hourly and separate wages for time spent on statutory rest periods apart from and in addition to the piece-rate pay in violation of the WAC 296-126-092(4), and willfully and intentionally withheld wages pursuant to RCW 49.52.050, .070.

After an exchange of informal discovery and class data and contested but productive settlement discussions between Counsel for Plaintiff and Defendant (the "Parties") that took place through phone calls and email correspondence over a period of several months between September 2021 and January 2022, the Parties agreed to settle this action for approximately 26% of the maximum rest break wages allegedly owed to the Class Members during the Class Period, excluding double damages and interest. The Settlement Agreement ("S.A.") is attached as **Exhibit 1** to the Declaration of Craig J. Ackermann ("CJA Decl."), filed herewith. The proposed Settlement Agreement satisfies all the criteria for preliminary settlement approval under Fed. R. Civ. P. ("FRCP") 23 and is fair, adequate, and reasonable. Defendant does not oppose Plaintiff's instant motion. Accordingly, Plaintiff requests that the Court: grant preliminary approval of the proposed Settlement; conditionally certify the Class; appoint Plaintiff and Plaintiff's Counsel as Class Representative and Class Counsel, respectively; approve the proposed notice plan; and approve deductions from the Gross Settlement Amount ("GSA") pursuant to the Settlement.

## II.    FACTUAL BACKGROUND

Watkins and Shepard Trucking, Inc. is a Montana corporation engaged in the business of trucking and transportation. CJA Decl., ¶ 17.a. Defendant is headquartered in Missoula, Montana, and operates out its terminal there. *Id.* During the Class Period, Defendant employed approximately 115 truck drivers who were paid using Defendant's per-mile piece-rate compensation system. *Id.* ¶

17.c. All of Defendant's piece-rate truck drivers in Washington were compensated using the piece-rate compensation system, but with no separate and hourly pay for rest breaks or for all hours worked, such as for all detention tine and all time associated with per and post-trip inspections. *Id.* ¶ 17.b-d. According to the informal discovery provided by Defendant's counsel, Plaintiff and the Class Members earned a total of $4,379,081.89 in piece-rate wages during the Class Period. *Id.* ¶ 17.e.

### III.    PROCEDURAL BACKGROUND

On February 25, 2019, Plaintiff filed his class action Complaint in the Pierce County Superior Court alleging causes of action for: (1) Defendant's failure to pay hourly and separate wages for time spent on statutory rest periods apart from and in addition to the piece-rate pay in violation of WAC 296-126-092(4); (2) Defendant's failure to pay minimum wage for all non-productive time (e.g., detention time, loading and unloading, pre and post-trip inspections, etc.) in violation of RCW 49.46 *et seq.*, including RCW 49.46.020 and 49.46.090;[1] (3) Defendant's failure to satisfy wage obligations assumed through contract in violation of RCW 49.52.050(2); and (4) double damages for willful and intentional withholding of wages pursuant to RCW 49.52.050 and 070. On March 28, 2019, Defendant filed its Notice of Removal of the action from the Pierce County Superior Court to the United States District Court for the Western District of Washington. CJA Decl., ¶ 18. On April 4, 2019, the Parties jointly filed a stipulated motion staying the case pending the Ninth Circuit's decision in *International Brotherhood of Teamsters, Local 2785 v. FMCSA* (hereinafter "*IBT v. FMCSA*"),[2] which the Court granted on November 4, 2019. On January

---

[1] On September 5, 2019, approximately six months after this class action was filed, the Washington Supreme Court issued a decision in *Sampson v. Knight Transp., Inc.*, 193 Wn.2d 878 (Wash. Sept. 5, 2019). The Washington Supreme Court in *Sampson* held that the Washington Minimum Wage Act (WMWA) does not require non-agricultural employers to pay their piece-rate employees separately and per hour for time spent performing activities outside of piece-rate work.

[2] On December 21, 2018, after being petitioned by the American Trucking Associations (ATA), the Federal Motor Carrier Safety Administration (FMCSA) announced its determination that California's state meal and rest break laws are preempted under 49 U.S.C. 31141 because the California laws are more stringent than the Federal Hours of Service regulations, and "they have no safety benefits that extend beyond those already provided by the Federal Motor Carrier Safety Regulations, . . . they are incompatible with the Federal hours of service regulations, and . . . they cause an unreasonable burden on interstate commerce." *See* Federal Motor Carrier Safety Administration, *California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers; Petition for Determination of Preemption*, Docket No. FMCSA-2018-0304, at p. 1 (Dec. 21, 2018), *available at* https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/docs/regulations/440601/california-meal-and-rest-break-rules-preemption-determination.pdf (the "December 21, 2018 Order"). On December 27, 2018, the International Brotherhood

15, 2021, the Ninth Circuit panel denied the petitions for review of the FMCSA's interpretation of 49 U.S.C. 31141 and its determination that the federal Hours of Service rules preempt California's meal and rest break rules merits deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *IBT v. FMCSA*, 9th Cir. Case No. 18-73488, Dkt. #130. The Ninth Circuit panel in *IBT v. FMCSA* declined to consider whether the FMCSA's December 21, 2018 preemption Order applies retroactively. *Id.* at n.5.[3] On March 25, 2021, the Ninth Circuit denied the petitions for rehearing and rehearing *en banc*, and on April 2, 2021, it issued its formal mandate pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure, thereby entering its January 15, 2021 judgment in *IBT v. FMCSA*.[4]

In September 2021, after the Ninth Circuit panel's decision in *IBT v. FMCSA*, recognizing agency deference to the FMCSA ruling as to California's meal and rest break law but explicitly leaving the issue of the retroactivity of such deference to periods before the agency opinion open and undecided, the Parties agreed to participate in arm's-length negotiations through phone calls

---

of Teamster, Local 2785 ("IBT") filed a Petition for Review of the FMCSA's December 21, 2018 Order in the U.S. Court of Appeals for the Ninth Circuit, requesting the court review and reverse the FMCSA's December 21, 2018 Order. *See International Brotherhood of Teamsters, Local 2785 v. FMCSA*, 9th Cir. Case No. 18-73488. Separately from the *IBT v. FMCSA* case, on October 9, 2019, the Washington Trucking Associations, Inc. (WTA) submitted a petition to the FMCSA requesting a determination that Washington's meal and rest break rules are preempted by the federal Hours of Service rules, as applied to drivers of commercial motor vehicles. The WTA's Petition for Determination of Preemption is available at: https://www.fmcsa.dot.gov/regulations/notices/2019-22061. On November 17, 2020, the FMCSA issued a determination of preemption stating that Washington's rest break laws are preempted under 49 U.S.C. § 31141. FMCSA-2019-0128; 85 Fed. Reg. 73335 (Nov. 17, 2020) (hereinafter the November 17, 2020 Order").

[3] Prior to resolving this Action, the Parties become aware of a pending Ninth Circuit Court of Appeals case directly addressing the post-Preemption Order enforcement/retroactivity issues as to California meal and rest break rules. *See Valiente & Aiad v. Swift Transp. Co. of Arizona, LLC*, 9th Cir. Case No. 21-55456 ("*Valiente v. Swift*"). Specifically, the Plaintiff's/Appellants' opening brief in *Valiente v. Swift* describes the "statement of issue" on appeal as follows: "Did the district court err in holding that the FMCSA's decision to preempt California's meal-and-rest-break rules retroactively applied to require dismissal of an already-pending lawsuit alleging violations that occurred years before the agency's decision?" *Valiente v. Swift*, Dkt. #15 at 11. Appellee Swift's position is that the concept of "retroactivity" is irrelevant, and that the relevant issue/inquiry is whether the state break laws can be "enforced" any longer after issuance of the Preemption Order. Swift's answering brief was filed on February 9, 2022 (*Id.* at Dkt. #26), and Plaintiff/Appellants' optional reply is due March 28, 2022 (*Id.* at Dkt. #35). The Ninth Circuit's decision in *Valiente v. Swift* almost certainly would have impacted the remaining viability of Plaintiff's rest break claims in this Action, specifically, whether the FMCSA's December 21, 2018 Order applies retroactively.

[3] On May 21, 2021, Petitioner William B. Trescott filed a writ of certiorari with the United States Supreme Court in the *IBT v. FMCSA* case, which was assigned case number 20-1662. On October 4, 2021, the United States Supreme Court denied Petitioner Trescott's writ of certiorari. *IBT v. FMCSA* (United States Supreme Court Case No. 20-1662).

[4] On May 21, 2021, Petitioner William B. Trescott filed a writ of certiorari with the United States Supreme Court in the *IBT v. FMCSA* case, which was assigned case number 20-1662. On October 4, 2021, the United States Supreme Court denied Petitioner Trescott's writ of certiorari. *IBT v. FMCSA* (United States Supreme Court Case No. 20-1662).

and emails and to engage in an informal exchange of discovery. CJA Decl., ¶ 19. In September of 2021, Plaintiff sent a request for informal discovery to Defendant's counsel, and in November and December of 2021, Defendant's counsel provided Plaintiff's counsel with a set of responsive documents including, *inter alia* and a class list spreadsheet showing the Class Members' hire dates, termination dates, and their total miles driven and total piece-rate compensation earned during the Class Period. *Id.* On January 21, 2022, the Parties filed a Joint Status Report requesting that this Court lift the stay Ordered on April 5, 2019, set a deadline for Plaintiff to file a motion for preliminary approval within forty-five to sixty days and to vacate all other pending deadlines while the Parties finalized the Settlement Agreement, which this Court granted on January 25, 2022. *Id.* ¶ 20. At all times during the settlement discussions, the Class Members were represented by Plaintiff's counsel and Defendant was represented by its counsel. *Id*. After intensive, arm's-length negotiations, the Parties agreed to the terms of the Settlement Agreement before this Court. *Id.* ¶ 21, **Exhibit 1**.

## IV.    THE PROPOSED SETTLEMENT TERMS

<u>Gross Settlement Amount</u> – Defendant will pay the non-reversionary amount of $50,000, which is inclusive of all of the following payments set forth in the Settlement Agreement: Plaintiff's Class Representative Payment ($5,000), Class Counsel's attorneys' fees of 30% of the GSA (i.e., $15,000) and up to $2,500 in litigation costs, and the Settlement Administrator's fees and expenses (estimated to be $5,000). S.A., ¶ 13. The Net Settlement Amount ("NSA") of approximately $22,500 is the amount remaining after all of the foregoing deductions, and it will be paid out to the Class Members without the need for Class Members to claim their pro-rata share. Each Class Member's share shall be calculated by first dividing his or her Piece Rate Earnings during the Class Period by the sum total of all Class Members' Piece Rate Earnings during the Class Period. This calculation will result in a percentage figure for each Class Member (the "Percentage Figure"). The Percentage Figure will then be used to determine each Class Member's portion of the Settlement Proceeds by multiplying the Percentage Figure to the Settlement Proceeds. This portion is referred to as the "Settlement Share." *Id.* ¶¶ 13, 39(b).

<u>Class Definition</u> – The "Class Members" are all individuals who (1) resided in Washington

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
- 4 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

State, (2) held Washington State Commercial Driver's Licenses, (3) were employed by Defendant, (4) in the position of truck driver, (5) and who were paid, in whole or in part, on a per-mile piece-rate basis (or any other piece-rate basis), (6) at any time from February 25, 2016 through November 17, 2020. *Id.* ¶ 4.

Checks Cashed Process – Class Members will not be required to file a claim to receive their share of the NSA. If any Class Members do not cash or deposit their checks within the 90-day Check Cashing Period, any amounts associated with those uncashed checks will be sent by the Settlement Administrator to the State of Washington with the associated name of the Class Member pursuant to Washington's Unclaimed Property Act. *Id.* ¶ 36. If any Class Members opt-out of the Settlement, their portion of the Settlement shall remain with the NSA for pro rata distribution to the Participating Class Members. *Id.* Class Members will have the opportunity to correct any errors on his or her Share Form concerning the amount of Piece Rate Earnings that was used to calculate their Individual Settlement Payment. *Id.* ¶ 49.

Class Counsel's Attorneys' Fees and Costs – Class Counsel requests, and Defendant does not oppose, that the Court preliminarily approve their attorneys' fees in the amount of 30% of the GSA ($15,000) and litigation cost reimbursement (of up to $2,500.) *Id.* ¶ 13.

Class Representative Payment – Plaintiff requests the Court preliminarily approve a Class Representative Payment of $5,000, which Defendant does not oppose. *Id.*

Settlement Administration – The Parties have selected Atticus Administration, LLC ("Atticus") to serve as the Settlement Administrator. Atticus has administered hundreds of wage and hour settlements, (see www.atticusadmin.com/about-us/) and pursuant to the parties Settlement Agreement, Atticus has provided a quote of $5,000 to administer this Settlement. S.A., ¶ 13.

Class Notice – The proposed Class Notice fully informs the Class Members of the nature of the lawsuit and each Class Member's rights under the terms of the Settlement Agreement and applicable law, and includes, without limitation: (1) a detailed explanation of the case, including the basic contentions or denials of the parties; (2) a statement that the court will exclude the member from the Class if the member so requests by a specified date; (3) a procedure for the member to follow in requesting exclusion from the Class; (4) a statement that the judgment, whether favorable

or not, will bind all members who do not request exclusion; and (5) a Share Form that defines the Class Period, lists the Piece Rate Earnings during that period according to Defendant's records, calculates an estimated share of the Settlement for the member, and explains that Class Members do not need to take any action to receive their share of the Settlement. *See* S.A., **Exhibit 1**.

Tax Consequences of Settlement Payments – One-third (33%) of every Individual Settlement Payment will represent wages allegedly due and will be subject to required legal deductions and reported on a Form W-2. The other two-thirds (67%) of every Individual Settlement Payment will represent alleged penalties and interest and will be reflected on a Form 1099. *Id.* ¶ 39(c).

Scope of Release and Final Judgment – The release contemplated by the proposed Settlement corresponds to the operative Complaint, releasing all claims that were or could have been asserted based on the allegations of the Complaint against Defendant during the Class Period. *Id.* ¶ 57. Plaintiff will enter a general release in exchange for his Class Representative Payment. *Id.* ¶ 56. Upon final approval of the Settlement, Class Counsel will submit a proposed final judgment. *Id.* ¶ 68.

## V.    **ARGUMENT**

### A.  **The Court Should Preliminarily Approve This Settlement Under FRCP 23(e).**

A certified class action (or a class proposed to be certified for purposes of settlement) may not be dismissed, compromised or settled without approval of the Court. *See* FRCP 23(e). Proper review and approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement after submission of a written motion; (2) dissemination of mailed and/or published notice of the settlement to all class members; and (3) a formal fairness hearing, or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented. *Manual for Complex Litigation* (4th ed. 2004), § 21.61. The decision to approve or reject a proposed settlement is committed to the sound discretion of the court and may be reversed only upon a strong showing of clear abuse of discretion. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
- 6 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

FRCP 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified (FRCP 23(a) and (b); *Hanlon*, 150 F.3d at 1020); and (2) that the settlement is fair, reasonable, and adequate (FRCP 23(e)(2)).  Here, both requirements for preliminary approval are satisfied.

### B.  The Class Satisfies the Requirements of FRCP 23 for Conditional Certification.

FRCP 23(a) sets out prerequisites for class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  FRCP 23(a)(1)-(4).  Furthermore, Rule 23(b)(3) provides that a class action seeking monetary relief may only be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FRCP 23(b)(3).  These requirements are met here.

### 1.  FRCP 23(a) Requirements for Class Certification Have Been Met.

#### i.  The Class is Sufficiently Numerous.

Numerosity demands that the class be large enough that joinder of all members be impracticable.  FRCP 23(a)(1). Courts have routinely found numerosity satisfied with classes of at least forty (40) members. *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). Here, numerosity is met because Defendant has indicated that there are approximately 115 members of the Class. CJA Decl., ¶ 17.c.

#### ii.  The Commonality Requirement is Satisfied.

Commonality for class certification concerns the existence of questions of law and/or fact common to the class and is "construed permissively." *Hanlon*, 150 F.3d at 1019. The common questions here relate to Defendant's uniform policy and/or practice of compensating the Class using its per-mile piece-rate compensation system, which does not pay Class Members separately and hourly for rest breaks, or for all hours worked, such as for all detention time and all time associated with per and post-trip inspections. *Id.* ¶ 17.c, d.

#### iii.  Plaintiff's Claims Are Typical of Those of the Putative Class.

Typicality is met if the named Plaintiff's claims "are reasonably co-extensive with those of

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
- 7 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

absent class member; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, typicality is satisfied because Plaintiff's claims are the same as claims brought by the Class: the named Plaintiff was employed by Defendant as a truck driver, was subject to the same compensation policies and procedures as the rest of the Class, he alleges that he incurred unpaid rest break wages, and he seeks the same type of relief. *See* Declaration of Tom Doty ("Doty Decl."), ¶¶ 2-3.

### iv.    Plaintiff and Counsel Will Fairly and Adequately Represent the Class.

Adequacy permits class certification only if the "representative parties will fairly and adequately protect the interests of the class." FRCP 23(a)(4). This means that the proposed class representatives and their counsel cannot have conflicts of interest with the class and must vigorously prosecute the action on behalf of the class. *Hanlon*, 150 F.3d at 1020. Neither Plaintiff nor his counsel have a conflict with any putative Class Member. CJA Decl., ¶ 3; Doty Decl., ¶ 4. In addition, Plaintiff's counsel has performed substantial work and diligently investigated and prosecuted this case to a successful conclusion. *Id.* ¶ 16. Plaintiff's counsel has significant experience litigating wage and hour class actions and have been certified by numerous state and federal courts as competent, adequate class counsel. *Id.* ¶¶ 4-15.

### 2.    FRCP 23(b)(3) Requirements for Class Certification Have Been Met.

Under Rule 23(b)(3), plaintiffs must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." The common questions raised in this action predominate over any individualized questions concerning the Class. Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). In other words, courts must determine whether the focus of the proposed class action will be on the actions and conduct of the defendants rather than the behavior of individual class members. *Hanlon*, 150 F.3d at 1022-23. Here, the common questions of whether Defendant failed to pay Class Members separately and hourly from their piece-rate pay for rest breaks, and whether that failure violates the law, predominates over any potential individualized issues. CJA Decl., ¶ 17.b. Further, this class action

would be a superior method of adjudication compared to a multitude of individual suits. To determine if the class approach is superior, courts consider: (1) the interest of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability of concentrating the litigation in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. FRCP 23(b)(3)(A)-(D). Here, a class action device is preferable because the Class Members do not have a strong interest in controlling their individual claims as the individual prosecution of the claims would be identical to and duplicative of the class action litigation. The use of the class action mechanism here would also efficiently resolve numerous identical claims at the same time while avoiding the waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation. Because there are no manageability issues presented by the resolution of the Class' identical claims under Washington state law, a class action is the superior method for adjudicating the claims in this action.[5]

## C. **The Settlement is Fair, Reasonable, and Adequate.**

In deciding whether to approve a proposed class action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). In exercising their sound discretion to approve settlements, courts regularly consider whether the settlement is fair, non-collusive, and "reflects all the normal perils of litigation as well as the additional uncertainties inherent in complex class actions." *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 179-80 (5th Cir. 1979). Included in this analysis are considerations of "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7)

---

[5] Courts have routinely certified similar claims in Washington State. *See e.g.*, *Mendis v. Schneider National Carriers, Inc.*, 2017 WL 497600, at *7 (W.D. Wash. Feb. 2, 2017) (order granting motion to certify identical claims to those asserted here for unpaid rest periods for truck drivers paid on a piece-rate basis); *see also Helde v. Knight Transportation*, 2015 WL 11216714, at *1–2 (W.D. Wash., Mar. 31, 2015) (Order Denying Motion to Decertify the Class with respect to claims for unpaid rest breaks for drivers paid by the mile with no separate and hourly pay for rest periods).

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026). Importantly, there is a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. April 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Applying these factors to this case, the proposed Settlement is fair, reasonable, and adequate.

1. **The Settlement Amount is a Fair Compromise in Light of Risks and Uncertainties.**

   a. **Plaintiff's Claims**

Plaintiff alleges that Class Members were not separately compensated on an hourly basis for their statutory rest breaks. CJA Decl., ¶¶ 18, 22. The crux of Plaintiff's Complaint is that Defendant paid its drivers on a per-mile piece-rate basis but did not pay separately and hourly for rest periods as required by Washington law. *See Demetrio v. Sakuma Bros. Farms, Inc.*, 183 Wn.2d 649, 659, 355 P.3d 258, 264 (Wash. 2015); *Helde v. Knight Transp., Inc.*, Case No. C12-0904RSL, 2016 WL 1687961, at *4 (W.D. Wash. Apr. 26, 2016); *Mendis v. Schneider Nat'l Carriers, Inc.*, 2016 WL 66500992, *4 (W.D. Wash. Nov. 10, 2016).[6] Plaintiff alleged that during the proposed Class Period, Defendant failed to pay putative Class Members hourly and separately for ten minutes of rest break time for each four hours they worked, and that Defendant had no compensation plan to pay its truck drivers such wages separately from their per-mile piece-rate pay. CJA Decl., ¶ 22. Plaintiff further alleged Defendant may be liable under RCW 49.52.050 and 070 for double

---

[6] In 2015, the Supreme Court of Washington confirmed that an employer's obligation to pay wages for rest periods under WAC 296-131-020(2) extends to agricultural piece-rate workers in *Demetrio v. Sakuma Bros. Farms, Inc.*, 183 Wn.2d 649, 659, 355 P.3d 258, 264 (Wash. 2015). This means that WAC 296-131-020(2) obligates an employer of agricultural employees compensated on a piece-rate basis to pay rest period wages separate and apart from the employees' piece-rate pay. *Id.* at 263. As the Washington Supreme Court also held, "WAC 296-131-020(2) requires that rest break time be compensated at the pieceworker's regular rate of pay," i.e., the wages earned by the worker for the amount of time worked, minus rest break time, divided by the weekly piece-rate earnings. *Id.* at 264–65. In 2016, the court in *Helde v. Knight Transportation, Inc.*, applied *Sakuma* to trucking companies that pay on a piece-rate basis and held that such trucking companies must also pay separately and hourly for rest periods in addition to the piece-rate pay. *Helde*, 2016 WL 1687961 at *4. Also in 2016, the court in *Mendis v. Schneider Nat'l Carriers, Inc.* held that truckers' rest breaks must be compensated separately and hourly where pay is on a piece-rate basis, and that Washington-resident drivers are entitled to rest break pay for those routes.

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
- 10 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

1    damages where the employer willfully, and with intent to deprive, withheld wages. *See Wingert v.*

2    *Yellow Freight Sys., Inc.*, 146 Wn.2d 841, 847–51 (Wash. 2002).[7]

3       b. **Defendant's Defenses**

4       Defendant denied the allegations in the Complaint, and maintained that it could not be held

5    liable for the claims alleged by Plaintiff for several reasons. Most significantly, Defendant asserted

6    that Plaintiff's unpaid rest break claims are federally preempted by the FMCSA's November 17,

7    2020 Order determining that Washington's state meal and rest break laws are federally preempted

8    by DOT Hours of Service rules, along with the Ninth Circuit panel's January 15, 2021 decision in

9    *IBT v. FMCSA* that held the FMCSA's December 21, 2018 Order merits *Chevron* deference. See

10   footnote 2, *supra*; CJA Decl., ¶ 25. The FMCSA's orders that California and Washington's meal

11   and rest break laws are federally preempted, and the *IBT v. FMCSA* decision, hang over Plaintiff's

12   rest break claims, and Plaintiff recognizes that there is substantial risk involved with these issues.

13   CJA Decl., ¶ 25. If this Court granted the FMCSA's November 17, 2020 Order (preempting

14   Washington's meal and rest break laws) *Chevron* deference retroactively, rather than prospectively,

15   Plaintiff's individual rest break claims, and the rest break claims of the putative Class, would be

16   worthless. *Id.* While courts have split regarding the retroactivity of the FMCSA's preemption

17   orders—with the only Washington court Plaintiff's counsel is aware of declining to retroactively

18   preempt Washington rest break claims in *Skau v. JBS Carriers*—the recent trend of California

19   courts determining that the FMCSA's December 21, 2018 Order applies retroactively[8] raises

---

20   [7] As discussed in footnote 1 herein, subsequent to Plaintiff filing his Complaint, the Washington Supreme Court issued

21   its decision in *Sampson*. The Washington Supreme Court held that the WMWA does not require non-agricultural
     employers to pay their piece-rate employees per hour for time spent performing activities outside of piece-rate work.

22   *See Sampson*, 193 Wn.2d at 890 ("WAC 296-126-021 merely provides that where the regulation applies, compliance
     with the MWA's minimum wage requirements may be demonstrated by workweek averaging. It does not deprive non-

23   agricultural workers of their statutory minimum wage and therefore does not conflict with the MWA."). In light of the
     Washington Supreme Court's decision in *Sampson*, Plaintiff agreed that his second cause of action, which alleges

24   violations of the WMWA for failing to pay minimum wage hourly and separately for non-productive time activities, as
     well as his third cause of action, alleging violations of the Wage Rebate Act, RCW 49.52.050(2), were no longer

25   actionable, and Plaintiff therefore placed no value on the non-productive time or Wage Rebate Act claims for the
     purposes of Settlement. CJA Decl., ¶ 23, n.7.

26   [8] *Compare Skau v. JBS Carriers, Inc.*, Case No. 2:18-cv-00681-RAJ, Doc. #47, p. 4 (W.D. Wash. Sept. 23, 2019)
     (denying JBS Carriers' motion for judgment on the pleadings on the plaintiff's unpaid rest break claim, and determining

27   that JBS did not show "that the FMCSA's 2018 Decision on California rules would apply retroactively to bar Plaintiff's
     claim alleged under Washington law.") *and North v. Superior Hauling & Fast Transit, Inc.*, Case No. 5:18-cv-02564-

28   JGB-KK, Dkt. No. 51 (C.D. Cal. May 31, 2019) ("it is clear that the 2018 FMCSA Order takes away or impairs vested
     rights acquired under existing California law. The Court is unable to identify, and Defendants do not point to, clear

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

1    serious risks to Plaintiff's unpaid rest break claims, as does the pending *Valiente v. Swift* Ninth

2    Circuit case, which will likely determine whether the FMCSA's December 21, 2018 Order applies

3    retroactively, and which is being considered for an upcoming oral argument in June 2022. *Valiente*

4    *v. Swift*, 9th Cir. Case No. 21-55456 (Dkt. #37). *Id.* Plaintiff's counsel had to take such risks into

5    account in the settlement negotiations here.

6        Defendant also asserted it could defeat class certification, and that Plaintiff's rest break

7    claim would not be certified. *Id.* ¶ 26. While Washington courts have certified piece-rate claims

8    similar to those asserted in this action, some other federal courts outside of Washington have either

9    refused to certify or have decertified similar piece-rate claims.[9] *Id.* Thus, while Plaintiff feels that

10   the putative Class would be certified if this matter had not been resolved, there are some risks

11   associated with non-certification of the putative Class claims. *Id.*

12       Defendant further contends that Plaintiff would face a challenge in establishing that the

13   *Demetrio* decision, a case on which Plaintiff's claims rely, should apply to non-agricultural piece-

14   rate workers, and that an unfavorable ruling for Plaintiff would mean that very little recovery would

15   be granted to the putative Class Members. *Id.* ¶ 27. Defendant based its argument on the fact that

16   the holding in *Demetrio*, which came down in 2015, did not apply to the rest break regulation for

---

statutory authority granting the Secretary of Transportation the authority to promulgate retroactive preemption determinations. Nor does the language of the 2018 FMCSA Order clearly indicate an intent to have retroactive effect. . . .") *with Ayala v. U.S Xpress Enterprises, Inc.*, Case No. 5:16-cv-00137, 2019 U.S. Dist. LEXIS 77089, at *7 (C.D. Cal. May 2, 2019) (holding that, unless the Ninth Circuit issues a ruling to the contrary, the plaintiffs' California meal and rest break claims are preempted by the FMCSA's agency determination, because "[t]he Court *currently* has no authority to enforce the regulations under which Plaintiff brings his [unpaid meal and rest break claim, so] the issue of retroactive effect is irrelevant."); *Connell v. Heartland Express*, Case No. 2:19-cv-09584-RGK-JC, 2020 U.S. Dist. LEXIS 29235, at *8 (C.D. Cal. Feb. 6, 2020) ("this Court concurs with the line of cases that have found that the FMCSA order applies retroactively by necessity because the FMCSA order forecloses present enforcement of the preempted laws."); *Robinson v. Chefs' Warehouse, Inc.*, No. 15-cv-05421-RS, 2019 U.S. Dist. LEXIS, at *11-12 (N.D. Cal. Sept. 10, 2019) (finding the reasoning of *Ayala* persuasive and holding the court had no authority to enforce the preempted law at all, including retroactively); *and Henry v. Cent. Freight Lines, Inc.*, Case No. 2:16-cv-00280-JAM (EFB), 2019 U.S. Dist. LEXIS 99594, at *9-11 (E.D. Cal. June 13, 2019) (stating that "unless and until the Ninth Circuit determines otherwise, this Court will follow the FMCSA Preemption Order and will not enforce the preempted provisions[,]" and accordingly granting summary judgment to all California meal and rest break claims).

[9] *See Ortega v. J.B. Hunt Transport, Inc.*, Case No. 2:07-cv-08336-RGK-AFM (C.D. Cal. Aug. 7, 2018) Dkt No. 280 (Order Re: Defendant's Motion for Decertification; Defendant's Motion for Partial Summary Judgment) (decertifying a class of California drivers alleging similar claims for unpaid rest breaks); *John Burnell, et al.,* v. *Swift Transp. Co. of Arizona, LLC*, 5:10-cv-00809-VAP-OP, 2016 WL 2621616 (C.D. Cal. May 4, 2016) (denying a motion for class certification after finding no evidence of an unlawful common policy and there "was wide variation as to if, when, and for how long any particular driver performed any of these allegedly uncompensated tasks."); *Cole v. CRST, Inc.*, 2012 U.S. Dist. LEXIS 144944, at *21–22 (C.D. Cal. 2012) (decertifying claims of class where amount paid per mile and time driven were averaged above minimum wage for non-driving duties too).

---

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
- 12 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

1   non-agricultural piece-rate workers.[10] *Id.*

2       Finally, Defendant asserted that even if *Demetrio* is applied to non-agricultural piece-rate

3   workers, Plaintiff would have difficulty proving Defendant willfully withheld wages, and thereby

4   would not be entitled to double damages pursuant to RCW 49.52.070. *Id.* ¶ 28. When there is a

5   bona fide dispute over whether an employer owes wages, the employer's failure to pay owed wages

6   is not willful. *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 160, 961 P.2d 371, 372 (1998).

7   Defendant contends that its failure to pay allegedly owed wages was not willful because there was

8   a bona fide dispute over whether it had an obligation to make a separate payment for rest-period

9   wages, as no one had ever advocated or interpreted the law as requiring a separate payment for rest

10  breaks when employees are paid on a piece-rate basis prior to the *Demetrio* case. CJA Decl., ¶ 28.

11  As a result, and coupled with its federal preemption defense, Defendant contested that it could not

12  have acted willfully considering that it had no way of knowing that it was not in compliance with

13  Washington law with respect to rest breaks. *Id.*

14       In considering these risks and others, the Parties agreed that Settlement was appropriate,

15  and that the Settlement here is fair and reasonable.

16       c.  **The GSA Represents a Substantial Recovery Considering the Risks and**

17          **Defendant's Defenses.**

18       The $50,000 GSA represents approximately 26% of Defendant's maximum rest break

19  wages allegedly owed to the Class Members during the Class Period ($190,490.06), excluding

20  double damages and interest. *Id*. ¶ 24.a. This is a substantial recovery considering the serious risks

21  in this case and Defendant's numerous legal and factual defenses, especially considering the risk of

22  retroactive preemption of the Class' unpaid rest break claims in light of the Ninth Circuit panel's

23  January 15, 2021 *IBT v. FMCSA* decision and the pending *Valiente v. Swift* Ninth Circuit case. The

24  results obtained are well within the range of wage and hour class settlements that have been found

25  fair and reasonable by other courts. *See In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1042

---

26  [10] Although subsequent federal district courts, including in *Helde v. Knight Transp., Inc.*, Case No. C12-0904RSL,
27  2016 WL 1687961, at *4 (W.D. Wash. Apr. 26, 2016), Dkt. No. 161, and in *Mendis v. Schneider Nat'l Carriers, Inc.*,
    2016 WL 66500992, *4 (W.D. Wash. Nov. 10, 2016), have held that the law applies to truck drivers, this is still
28  somewhat of an open issue, since the only cases to have addressed those issues are federal court decisions and no
    decision has come out from the Washington Supreme Court.

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

(N.D. Cal. 2008) (approving settlement amounting to 9% of estimated total damages); *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009) (approving settlement amounting to 30% of the damages estimated by the class expert); *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement estimated to be worth between 1/6 and 1/2 of the plaintiffs' estimated loss); *Selk v. Pioneers Mem'l Healthcare Dist*., 159 F. Supp. 3d 1164, 1175 (S.D. Cal. 2016) (recognizing that wage and hour settlement was fair and reasonable where "total settlement fund" represented between 26% to 50% of the best possible recovery"); *Ladwig v. Arnie's Restaurants NW, Inc*., King County Super. Ct. No. 20-2-05319-8 SEA (May 17, 2021) (Hon. Patrick Oishi) (granting final approval to a class action settlement resolving unpaid wage claims where the settlement amount represented approximately 41% of the estimated damages); *Millican v. Seattle Tennis Club et al*., King County Super. Ct. No. 20-2-05117-9 SEA (May 14, 2021) (Hon. Michael R. Scott) (granting final approval to a class action settlement resolving unpaid wage claims where the settlement amount represented approximately 31% of the estimated damages). CJA Decl., ¶ 32. In light of these comparable settlements, the Settlement in the present case is within the zone of reasonableness and worthy of preliminary approval.

Moreover, the amount recovered per Class Member here, with an estimated average Individual Settlement Payment of $195.65 per Class Member (i.e., $22,500 NSA divided by 115 Class Members), is a comparable average individual class member recovery to other wage-and-hour settlements that have been granted final approval in Washington. For example, in *Birnbaum & Delapina v. Junk Consulting Services, LLC*, the court granted final approval in a wage-and-hour class action settlement where the average recovery per class member was $194.63. *See* Order and Judgment Granting Final Approval of Class Action Settlement and Attorney's Fees and Costs, Case No. 20-2-00351-4 KNT, Wash. Super. Ct. King County at Kent (Feb. 1, 2021) (Judge Ketu Shah). In addition, in *Young, Jr., v. Safelite Fulfillment, Inc.,* Judge James L. Robart granted final approval to a class of 120 Washington workers alleging unpaid rest break claims where the average individual class member recovery was $320.83. *See* Order Granting Plaintiff's Motion for Final Approval of Class Action Settlement, Case No. 2:19-cv-01027-JLR, Dkt. #33 (W.D. Wash. Dec. 3, 2020). *See also Ayala v. Olsen Brothers Ranches, Inc*., Case No. 17-2-01046-1, Wash. Super. Ct.

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
- 14 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

Benton County (July 27, 2018) (unpaid rest break claim settlement with an average recovery of $215.46 per class member). CJA Decl., ¶ 32.

These results, consistent with those of the instant case, demonstrate that the Settlement obtained here is fair and reasonable, especially when considering the serious risks Plaintiff faced in the immediate case. The highest amount for a settlement award here will be substantially higher for those Class Members who worked throughout the Class Period. CJA Decl., ¶ 32.

**2.  The Parties Sufficiently Investigated and Litigated this Matter to Allow Counsel and this Court to Conclude that the Settlement is Fair, Adequate, and Reasonable.**

The Parties engaged in an exchange of significant and substantive information relating to Class Members' rest break claims, as detailed above, and were able to estimate class damages and assess the risks of further litigation. *Id.* ¶¶ 19, 24. It was only after the Parties thoroughly investigated and evaluated the strengths and weakness of the case through arm's length settlement negotiations, that the Settlement was reached. *Id.* ¶¶ 20-21, 29-32. This is sufficient to support the Settlement. *See Lewis v. Starbucks Corp.*, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("approval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases").

**3.  The Settlement was the Product of Informed, Non-Collusive, and Arm's-Length Negotiations Between Experienced Counsel Whom Jointly Support the Settlement.**

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining, as it was here. *See Hughes v. Microsoft Corp.,* No. C98-1646C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery"). Here, the Settlement was a product of intensive, adversarial litigation between the Parties represented by skilled and experienced counsel, and that took place through phone calls and email correspondence over a period of several months between September 2021 and January 2022. CJA Decl., ¶¶ 2, 4-15, 20-21. Notably, prior to and during the settlement discussions, the Parties ensured both sides were fully informed about the strengths and weaknesses of their respective positions. *Id.* ¶¶ 18-19, 22-28. These factors support a finding that the Settlement

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
- 15 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

is fair, adequate, and reasonable.

### 4. **The Proposed Notice Plan is Reasonable.**

In order to protect the rights of absent class members, courts must provide the best notice practicable of a potential class action settlement. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Procedural due process requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). The Notice (Exhibit A to the Settlement Agreement) informs the Class Members about the terms of the Settlement, each Class Member's estimated individual settlement award, the procedure by which the Class Members may challenge the calculation, object to or opt out of the Settlement, and the date and location of the final approval hearing. Accordingly, the Notice complies with the standards of reasonableness of a settlement notice disseminated under authority of the Court. In addition, the procedures surrounding the dissemination of the Notice ensure it will go out to Class Members in the manner best calculated to ensure that they are alerted to the terms of the Settlement and provided with the opportunity to respond to it. S.A., ¶¶ 44-55.

## VI.    THE REQUESTED ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE PAYMENT ARE FAIR AND REASONABLE.

In class actions, the court may award reasonable attorneys' fees and costs that are authorized by law or the parties' agreement. See FRCP 23(h). Here, Plaintiff's counsel is entitled to recover their attorneys' fees and costs for their wage claims under Washington law. *See* RCW 49.46.090 (employee who recovers for violations of minimum wage is entitled to "costs and such reasonable attorney's fees as may be allowed by the court"); RCW 49.52.070 (employer who willfully withholds wages "shall be liable in a civil action . . . for twice the amount of wages unlawfully [withheld] . . . together with costs of suit and a reasonable sum for attorney's fees"). The fee award requested by Class Counsel is the product of an agreement reached through arm's-length bargaining by negotiating counsel experienced in similar litigation, and is therefore fair and reasonable. CJA Decl., ¶¶ 20-21. Further, Defendant does not oppose this request. S.A., ¶ 37.

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
- 16 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

Where counsel to a class action seek fees from the common fund, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935, 942 (9th Cir. 2011) (citing *Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010)). Plaintiffs' counsel's request for fees is reasonable under either analysis.[11] Here, Plaintiff's Counsel seek an award of 30% of the common fund for their attorneys' fees, a percentage well within the range of approved fee awards by Washington courts in similar cases. CJA Decl., ¶ 38.

Plaintiff's Counsel further request reimbursement of litigation costs up to $2,500. *Id.* ¶ 40. "Attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

### A.    The Class Representative Payment is Reasonable.

Here, the proposed Class Representative Payment of $5,000 to the named Plaintiff is fair in recognition of his substantial service to, and efforts on behalf of, the proposed Class. Doty Decl., ¶¶ 5-7. The $5,000 Class Representative Payment compares favorably with other class representative service awards approved by courts in Washington and elsewhere. CJA Decl., ¶ 33. Defendant does not oppose this request. S.A., ¶ 38. The proposed Class Representative Payment of $5,000 for Plaintiff is therefore fair and reasonable.

### VII.    THE COURT SHOULD APPOINT ATTICUS ADMINISTRATION, LLC AS SETTLEMENT ADMINISTRATOR

The Parties propose that the Court appoint Atticus Administration, LLC to serve as the Settlement Administrator. CJA Decl., ¶ 41. Atticus is experienced in administering class action settlements and pursuant to the Parties Settlement Agreement, Atticus has provided a quote of $5,000 to administer this Settlement. *Id.*

### VIII.    THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING.

The last step in the approval process is the formal hearing, whereby proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of

---

[11] Prior to final approval, Plaintiff's counsel will file a separate motion for an award of attorneys' fees and costs, addressing in greater detail the facts and law supporting their fee request in light of all of the relevant facts.

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
- 17 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

approval, and Class Members or their counsel may be heard in support of or in opposition to the Settlement. The Parties propose that the Court schedule final approval hearing of the Settlement, including Plaintiff's request for attorneys' fees, costs, and the Class Representative Payment, to occur in late-August, 2022.

## IX.    **CONCLUSION**

For the foregoing reasons, Plaintiff respectively requests that the Court grant his motion for preliminary approval of his class action Settlement.


Respectfully submitted,


Date: March 23, 2022              By:    _/s/Brian Denlinger_____
                                         ACKERMANN & TILAJEF, P.C.
                                         Craig J. Ackerman, WSBA No. 53330
                                         Brian Denlinger, WSBA No. 53177
                                         2602 North Proctor St., #205
                                         Tacoma, WA 98406
                                         Telephone: (253) 507-4619
                                         Facsimile: (253) 276-0081
                                         cja@ackermanntilajef.com
                                         bd@ackermanntilajef.com

                                         INDIA LIN BODIEN, ATTORNEY AT LAW
                                         India Lin Bodien, WSBA No. 44898
                                         Attorney for Plaintiff
                                         2522 North Proctor St. #387
                                         Tacoma, WA 98406
                                         Telephone: (253) 212-7913
                                         Facsimile: (253) 276-0081
                                         india@indialinbodienlaw.com
                                         *Attorneys for Plaintiff and the Class*

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
- 18 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

1

## CERTIFICATE OF SERVICE

2      I, Jaclyn Blackwell, hereby certify and declare under penalty of perjury under the laws of

3  the State of Washington that, on <u>March 23, 2022,</u> I caused to be electronically filed the foregoing

4  Motion, along with the accompanying Declarations of Craig Ackermann and Tom Doty, the Notice

5  of Non-Opposition, and the Proposed Order, with the Clerk of the Court using the CM/ECF system

6  that will send notification of such filing to the following:

7
              India Lin Bodien, Esq.                      Craig J. Ackermann, Esq.
8             Law Offices of India Bodien, Esq.           Brian Denlinger, Esq.
              2522 North Proctor Street, #387             Ackermann & Tilajef, P.C.
9             Tacoma, WA 98406-5338                       1180 South Beverly Drive, Suite 610
              Tel: (253) 212-7913                         Los Angeles, CA 90035
10            india@indialinbodienlaw.com                 Tel: (310) 277-0614
                                                          cja@ackermanntilajef.com
11                                                        bd@ackermanntilajef.com

12
              Kenneth J. Diamond, Esq.                    Michael R. Phillips, Esq.
13            Winterbauer & Diamond PLLC                  McGuireWoods LLP
              1200 Fifth Avenue, Suite 1700              77 West Wacker Drive, Suite 4100
14            Seattle, WA 98101                           Chicago, IL 60601
              Tel: (206) 676-8440                         Tel: (312) 750-8902
15            ken@winterbauerdiamond.com                  mphillips@mcguirewoods.com

16

17      I further certify that I mailed a true and correct copy of the foregoing to the following non-

18  CM/ECF participant: N/A

19

20               /s/Jaclyn Blackwell
                 Jaclyn Blackwell
21               Office Manager
                 ACKERMANN & TILAJEF, P.C.

22

23

24

25

26

27

28